[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff husband against the defendant wife. The parties were married on January 27, 1981 in Brooklyn, New York. There are twin children, issue of the marriage, Alvin Jonathan Hunt, Jr., and April Mercedes Hunt, born April 6, 1982. There is one additional child born to the defendant, Edward Calvin Little, born September 30, 1979, who is not issue of the marriage, but who had been placed in the care of the plaintiff by a court in Brooklyn, New York. In August of this year Edward went to live with the defendant's sister and her husband in New York City. While it is unclear to the court whether there were recent New York court proceedings regarding the care and custody of Edward, this issue is immaterial since the care and custody of Edward is not before the court.
The parties have reached an agreement with regard to the custody and visitation of the twins. The court has considered the best interest of the children pursuant to the provisions of 46b-56
of the General Statutes, approves the terms and provisions of their stipulation and enters orders in accordance therewith.
While this has been a marriage of ten calendar years, the parties have been separated for much of the period of their marriage. The defendant is presently in a drug and alcohol rehabilitation program in Connecticut Valley Hospital. In November, 1989 she was in the residential program in Gaylord Hospital. In 1990 she was under treatment in the SATU (Substance Abuse Treatment Unit) program for drug and alcohol abuse. The court finds that during much of the marriage of the parties the defendant has abused alcohol and marijuana. The plaintiff has testified the defendant started drinking at the age of twelve.
At the time of the marriage, the defendant had two children from a prior relationship, the child, Edward, who was 2 years old, and a child, Keesha, who was 9 years old. Keesha has reached her majority.
At the time of the marriage the plaintiff was employed by the Housing Authority of the City of New York where he was employed as a caretaker. He had held this position for ten years.
In October, 1981 the defendant hit the plaintiff in the face with a glass. As a result the plaintiff went to live with his mother. The separation on this occasion lasted for two and one- CT Page 9082 half months. The plaintiff returned and until the parties next separation he did the food shopping, bought the children's clothes, did the washing and the cooking. When the twins were born he went to the store to buy the pampers, the milk, the baby clothes and their carriage. He cared for Keesha, Edward and the twins for a period of approximately fifteen months until August, 1983. At that time the plaintiff contacted gonorrhea which he says he contacted from the defendant. The defendant did not deny this testimony. In December of 1983 he fell off a bus on his way home from work and suffered a broken knee cap and broken femur. He was hospitalized for four months in King's County Hospital and underwent 7 operations in two years. He returned to the family home upon discharge from the hospital on two crutches and to stay in bed all day. Defendant's mother was living in the apartment at this time. The defendant was nasty to him, slapped him in the face and treated him so badly that he left the house and again went to his mother's after two or three weeks. He stayed with his mother this time a little over two months. It is difficult to piece together some of the time intervals during this period. Suffice to say that in 1985 the defendant had a relationship with one "Rambo" and the plaintiff again moved out. In June of 1985 his mother died and he took a one-room apartment. During this period he was in almost constant pain in his legs. In 1986 the New York authorities removed the children to foster care for two and one-half years. The plaintiff maintained regular contact with the children. At some point during this period the defendant came to live with the plaintiff in his apartment for two or three weeks and then left with "Rambo". In June or July 1988 the children were released to the care of the plaintiff and it was at that time that the plaintiff came to Connecticut and bought a house in West Haven for $169,000 with part of the money he received in settlement of his accident case against the bus company.
The foregoing details are relevant to the court's consideration of the factors of 46b-81 of the General Statutes. The defendant has contributed little to the parties' marriage. There has been physical abuse by the defendant (she stabbed the plaintiff several times in 1989). There have been a number of restraining orders issued restraining the defendant from coming upon the plaintiff's premises and there have been a number of arrests. The defendant is at fault for the breakdown of the marriage.
The defendant is 36 years of age. She has had an eleventh grade education. In the year 1990 to 1991 she worked for six months as a factory worker earning $5.85 per hour. She is capable of working and supporting herself.
The plaintiff is 56 years of age. He is permanently disabled and receives Social Security disability of $581 per month. He CT Page 9083 owns the real property at 52 Baker Street in West Haven which is a two-family house and receives $700 per month for the rental of the other apartment. He is caring for the twins who receive $310 per month by way of Social Security benefits. He has had an eighth grade education.
Neither party is seeking periodic alimony of the other. The only asset of the parties is the home, owned solely in the plaintiff's name, at 52 Baker Street in West Haven. As previously noted, this property was purchased by him with the proceeds of his accident settlement. Since its purchase the plaintiff has had to refinance the mortgage upon this property on two occasions to meet extraordinary expenses in excess of his monthly income. There is at present a $40,000 mortgage upon this property.
The defendant seeks a property division of $30,000 from the plaintiff to be paid to her on or before July 1, 1992, with interest on that amount at four (4%) percent per annum beginning November 1, 1991, or, in the alternative, the sum of $40,000, with interest at four (4%) percent per annum from the date of dissolution to the date of the sale or refinancing of said property, ninety days after the date that the minor children shall cease to reside principally with the plaintiff, or July 1, 2000 (six days short of 90 days after the children's eighteenth birthday).
With respect to alimony and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes 46b-82 ; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are CT Page 9084 entitled to great weight. Valente V. Valente, 180 Conn. 528, 530 (1980).
The court has considered all of the criteria of 46b-81,46b-82 and 46b-84 of the General Statutes, together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366, 368, this court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman,188 Conn. 232, 234 (1982). Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding: Leo v. Leo,197 Conn. 1, 5 (1985); and that the court need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307, 313-14 (1991).
In addition to the foregoing findings, the court finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. The marriage has broken down irretrievably.
The court enters the following orders:
1. A decree of dissolution of the marriage shall enter on the plaintiff's complaint on the grounds of irretrievable breakdown of the marriage.
2. The care, custody and education of the parties' two minor children, Alvin Jonathan Hunt, Jr., born April 6, 1982, and April Mercedes Hunt, born April 6, 1982, shall be committed to the plaintiff father.
3. While the defendant mother continues in her present residential program, she shall have telephone contact with the minor children at least two times per week, on Tuesdays and Thursdays at 8:00 P.M. The plaintiff shall make the children available for the defendant's telephone calls and shall not refuse collect calls. The defendant may visit with the minor children at Connecticut Valley Hospital during this period, if the parties are able to arrange transportation for such visits.
4. The defendant anticipates that she will begin a "halfway house" residential program in the Willimantic area in about mid- CT Page 9085 November, 1991. Telephone contact with the minor children, as provided in Paragraph 3 above, shall continue while the defendant is in said "halfway house" program. In addition, the defendant shall have reasonable visitation with the minor children as may be arranged between the parties, in view of the location of the defendant's residence and the plaintiff's transportation difficulties.
5. Upon the defendant presenting to counsel for the minor children documentation of the defendant's successful completion of her present residential program and the halfway house program, the defendant shall have visitation with the minor children on Saturdays, off the plaintiff's premises, with times to be arranged with consideration of transportation needs and the defendant's location, and with the location(s) of such visits also to be arranged.
6. Both parties will cooperate with the children's present counseling program and will follow the recommendations of the present counselors as well as any referrals that are made.
7. Neither party shall pay alimony to the other.
8. The plaintiff shall own the real property at 52 Baker Street in West Haven, Connecticut, free of any claim or demand by the defendant.
9. The defendant shall be entitled to take possession of all of her personal property located at 52 Baker Street, West Haven, and the plaintiff shall allow the defendant access to the premises for the purpose of removing said property at such time or times as the defendant may be able to arrange. Any dispute between the parties as to the division of such property shall be referred to the Family Relations office for resolution. In the event the parties are unable to resolve such differences they shall return to court for further orders.
10. Such other personal property in the possession of each of the parties shall be the property of the possessor free of any claim or demand by the other party.
11. Each of the parties shall be responsible for such liabilities as each have incurred since their separation in June, 1991, and shall indemnify and hold harmless the other party from any claim or demand thereon.
12. The defendant, at present, shall have no obligation to contribute to the support of the minor children, but upon her employment shall contribute support to the plaintiff in accordance with the Family Support Guidelines. CT Page 9086
Judgment shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE